Good morning, Your Honors. I'm Kenneth Covell. I represent Mr. Conitz, who is present in the front row center. He is the plaintiff appellant in this matter. I'd like to thank you for coming to Alaska and I hope you enjoy your stay. So far we have enjoyed it very much. Thank you. Wonderful. I'd like to focus on the very essence of the case. This is a simple case of statutory application. Congress, and only Congress, can authorize favoritism for Native Americans in employment. If Congress did not, as is the case here, that favoritism is otherwise unlawful discrimination. The prominent question in this case, and really the only question in this appeal is, is Teck's workplace preference for Natives of the Nanta region race, color, and national origin discrimination? Counsel, there was a previous iteration of this case that resulted in an unpublished decision in which there was a summary judgment for the defendant and against your client. And I'm wondering what effect, if any, the previous case has on our case today because it appears to me from reading it that we already held in an earlier case that there was no direct discriminatory intent evidence and yet this policy was in place at that time as well. So I wonder whether we're bound by that holding or whether we get to start over in this instance. You're absolutely not bound by that. That's what I call the comment-o issue. Comment-o of the restatement of judgment says that if you lose on an issue in a case and you go up on appeal on two issues and the reviewing court only reviews one of those issues, then there's no collateral estoppel or res judicata as to the other issue. And indeed, when we went back in Connett's two, defendants filed a res judicata motion and we litigated that issue and Judge Beislein said that there's no reason not to follow the restatement of judgments. And that's at... I guess it may depend on whether one views the previous opinion as having necessarily reached this issue of facial discrimination or not. And I guess that's really the question I'm asking as to whether our previous disposition necessarily incorporated that holding. Well, and I'd say to you no, because the previous disposition said that Mr. Connett's either wasn't qualified for the position or disposed of the case on summary judgment facts. Well, also said that there was no evidence of direct discriminatory intent, and that's the phrase that caught my eye, because the policy was in place, and if it wasn't evidence of direct discriminatory intent then, I'm not sure how it could be now. Because that's my concern, anyway. All right, well, let me try to respond to that in a legal way. The question you ask was raised in the district court at Connett's two, as to what rest judicata effect there might be from the decision of the appellate court in Connett's one. That was litigated through motion work and the district court ruled that, indeed, there was no rest judicata effect as to the legality of the preference. And what is our standard of review with respect to that ruling? We are allowed to affirm on any ground supported by the record. So if we are looking at that question, is it a legal question that we look at again, or do we have any deference that we owe to the district court on that question? I would say you don't look at it at all, but if you're going to look at it, then I would say you defer to the district court. Why? Well, the district court had the opportunity for there to be briefing on it, for there to be oral argument on it, for there to be consideration of the cases, consideration of the cases and consideration of the commento. Is it a legal issue or a factual issue? Well, I think it's a legal issue as to whether or not it has rest judicata or collateral estoppel effect. I suppose you could say that arguably it does because you're looking at that particular piece of paper and saying, ah, the fact established here is they made this decision. But Judge Beislein went on in a case and considered the issue. Counsel, why do we even get to this question in light of Judge Beislein's finding about your client's qualifications? Thank you. Because, first of all, if you rule on the preference issue, the preference itself makes out a prima facie case, and it's cited extensively in my brief. But Jerdome v. Continental Airlines, Ninth Circuit case, says that Continental's discriminatory policy itself supplies the requisite elements of a prima facie case. So we get past all that. If we do the simple test and find, as we will, that the policy is discriminatory, we don't need to do McDonnell-Douglas. We don't need to do facts. But if we're going to devolve into the facts, if you look at the actual qualifications of Mr. Connitz v. Mr. Barger, you find that Mr. Connitz has 28 years of mining experience, 19 years at Tech, six years of supervisory experience. He's got HAZWOPER certification, confined space entry certification, overhead crane certification. The district court found that you had an opportunity to put some things in the record when you moved for a preliminary injunction, but that the overwhelming evidence was that your client was not qualified for the position for which you sought promotion. Well, I think Judge Beislein is making credibility issues and finding a fact without an opportunity for discovery. And when the facts are supposed to be construed most favorably to the non-mover. And Judge Bybee, how can Tech say that Connitz wasn't qualified for the job as supervisor when they used him as an acting supervisor for eight years? How can you say that's not a triable issue of fact? And what really brings that issue home, sir, is, and this is all in the record around ER 186, 187, 185, or Mr. Connitz's affidavits relative to his qualification versus Mr. Barger's. But Mr. Connitz had a conversation with Mr. Hanna, who made the selection for the job, and Mr. Connitz represents he couldn't get any substantive reason why he wasn't as good or better. And you have Nicholson versus Hyannis Air Service and Lynn versus Regents California saying that subjective factors at this stage don't get you there. You have to have objective factors. But at the end of the conversation, both the parties agree, Mr. Hanna said, would you continue on as acting supervisor? And Mr. Connitz said, why should I stick my neck out? At which point, and this is SCR 62, this is from their documents, the Hanna file note, Hanna says, you'll be taking direction from an individual that didn't possess your skill level. So Mr. Hanna acknowledges that Mr. Connitz is qualified for the job and is better qualified than the next guy they're going to put in there. So there's a triable issue of fact there. Wood Connitz is coming back to the main issue, I hope I answered the questions. Coming back to the main issue, would Connitz's employment opportunity be better but for his race? Yes, if he were a native of the NANA region, he would be classified in a preferred category. 42 U.S.C. 2000 E2A2 says, it is unlawful for an employer to limit, segregate, or classify his employees in any way that tends to deprive any individual of employment opportunities or otherwise adversely affects his status as an employee because of his race, color, and national origin. So Mr. Connitz is limited and segregated. He's treated differently, he's classified differently, he's in a class of his own, in his work group of 29 people, he's the only non-shareholder. Does NANA own 25% of the equity of tech? No. See page I of the tech brief. See Connitz's reply brief, page A39 in the appendix. 43 U.S.C. 1626G says, a native corporation or a joint venture or partnership in which a native corp owns not less than 25% of the equity shall be excluded from Title VII. Tech and NANA concede the preference is illegal when they fail to discuss the Manhart v. L.A. water but for a simple test. Unless tech can prove a justification for the race and color and national origin discrimination, their policies should be enjoined, and it violates the law. Tech's argument, reduced to its essence, which is found at page 45 and 46 of its brief, is, quote, Connitz's argument to the effect that Title VII has a general goal of equal opportunity for all must give way where Congress created specific exemptions to Title VII. To this we agree. The law is equal opportunity for all. There is no congressional exception for tech, a Canadian mining corporation. I'm picking that up and returning it to opposing counsel. Thank you. Could be something you need, so. Morning. I'm Sean Halloran, representing Tech Alaska Incorporated. With me at the table is Mr. Daniels on behalf of NANA, and he's available for any questions you may have as well. There's no reason for this panel to reach any of the substantive issues in this case. The majority of the claims were dismissed correctly by the district court judge on the basis of res judicata. I believe that all of the claims in this case should have been dismissed on the basis of res judicata. But even if the district court was correct, all of the claims that are brought forward in this appeal, are within those that were expressly dismissed on the basis of res judicata. And the plaintiff does not give any argument anywhere at any time as to why the district court might have been wrong. If you look at the excerpts on page 116, it's part of the district court's order where they dismissed on res judicata grounds. And the court said that any facial challenge to tech's hiring policy in favor of NANA shareholders is barred by res judicata, because it could have been brought in the first litigation, whether it was or whether it wasn't. It could have, and therefore should have, and under federal law, which is applicable, it's barred in this case. So the only claim the court allowed to go forward was the claim specifically arising from the Barger promotion. And even though the Barger promotion occurred prior to final judgment in the last case, the district court ruled that there had been insufficient time between the promotion and the time that final judgment entered, such that he would allow Mr. Kahnitz an opportunity to litigate that one claim in this case. I think the law in this circuit is pretty plain that the date of final judgment is the cutoff for res judicata purposes, not the date of a prior summary judgment. But even if we allow it to go forward, the plaintiff has, at a minimum, waived the arguments. There's nothing in the brief to suggest that the district court was in any way wrong in ruling the facial arguments as to the invalidity or validity of tax hiring policy. Those are gone from this case, and there's nothing that brings them forward in this appeal, there's nothing that resurrects them. And where the plaintiff has not made those arguments to this court, then I think you have to conclude that there's nothing in this appeal that can survive a bar res judicata. Other than that, I'm happy to turn it over to Mr. Daniel. If he has any issues that he wants to address, I'll answer any questions that the panel may have. I don't believe we have any at the moment. Tom Daniel. May it please the Court, my name is Tom Daniel, and I represent the Defendant Intervenor, NANA Regional Corporation. We intervened in this case solely for the purpose of defending the shareholder preference. Like Mr. Halloran, I believe that that issue is not before the Court, because it's barred by the ruling in the prior case. And therefore, I have nothing to add to Mr. Halloran's argument, unless the Court has questions of me. Can you just walk me through why it is barred by the previous case? Well, in the previous case, one of the claims that Mr. Conitz could have made, but didn't make, was a facial challenge to the shareholder preference policy. The district court judge held, in his ruling on res judicata, that that claim was barred because it could have been raised below. In this Court, if you look at the appellate's brief, the argument throughout is a facial challenge to the shareholder preference program. And you're saying that that was not raised in Conitz 1? It was not raised, but it could have been raised in Conitz 1. I'm looking at the, I think I've got the right thing, the order from the first case, the 06 case. That's the earlier case, right? That's correct. The district court in the earlier case said that even if text, I'm paraphrasing, explanations, I'm looking at ER 246, even if text explanations were pretextual, application of the shareholder hiring preference is not prohibited by law, because it's based on the permissible distinction of shareholder status rather than race. And it goes on to explain why, in the district court's view, this was okay. It went on for a long paragraph. I thought it was raised in the earlier case. I'm looking at our decision in Conitz 1, and we certainly have referred in the very first paragraph to Conitz contention that text employment preference for non-shareholders is an unlawful racial preference in violation of Title VII of the Alaska Human Rights Act. Correct. And, Your Honor, the court affirmed on the grounds that there was no evidence to support that claim. Right, but that's very different from telling me that it wasn't raised. In the first case, there was only one argument raised, and the argument was that he was denied promotions, several promotions, illegally because of the shareholder preference. The claim that he did not make was the facial challenge to the shareholder preference program, which is the claim that he's raising in the brief on this appeal. Why is he barred from raising that here when he's got a second opportunity for a promotion that he claims he was denied, and he's raising now a different argument? Because he didn't raise the facial challenge claim is barred. What is not barred is the claim that he was denied this one promotion that Mr. Barger got. He's not, he wasn't barred by the first case from asserting that. But he is barred from asserting this facial challenge to the shareholder preference program, because that's a claim that could have been raised in the first case, was decided against him in this case on grounds of race due to CATA. I guess I'm a little puzzled. If I have a claim of employment discrimination, and I litigated on one theory, I don't get to come back and say, okay, now I've got a different theory, so I'm going to file a different complaint for denial of the same promotion. But if I am subsequently denied a promotion, I say, you know something, there's been some developments in the law here. I now have a different theory, I see the law differently than I saw it before. I'm not sure why that would be barred by race due to CATA. Just because I could have raised some novel claim that didn't occur to me at the time. I have a new cause of action, I have a new act of discrimination to complain about. Right, and I agree with your Honor, I don't think he is precluded from alleging that this particular promotion was discriminatory. He's not barred from doing that, and that's what the lower court held. What he is barred from doing is asserting a facial challenge, that just because he's an employee of Tech Alaska, that he can challenge the shareholder preference program. Our decision in Conex I refers to a facial and unlawful racial preference. And the district court seems to have thought there was one also, and the Thurston case seems to suggest it's a predicate that you have to decide before you even get to the prima facie case. I guess I don't understand your position. I'll explain part of my confusion. When Judge Graber was conducting the conversation with Mr. Conex's counsel, I thought that that conversation was, and maybe I just walked in the middle of the conversation, but I thought that conversation was about a race judicata effect of Conex I in our court. Which is very different from saying it was never raised in the district court at all, and therefore not raised at the Ninth Circuit at all. That's a very different form of race judicata. Right, and I think the confusion here again is because what we contend is barred by race judicata, it's only the facial challenge. I understand that's what you're saying, but I thought it was raised in Conex I. I haven't read the whole record in Conex I, but I have read the district court's decision and our decision, and they both appear to deal with the shareholder hiring preference on its behalf. I believe it was raised in Conex I, and the district court judge, or you, in essence, affirmed the dismissal as well. But if it was raised, then it can't be barred now because it wasn't raised. I've got a huge disconnect here, counsel. I thought I understood this when I came in, and now I read it. Well, I would like to defer to my co-counsel on this, because I was prepared to focus solely on the shareholder preference issue. This was an issue that was raised in my co-counsel's brief, and I would prefer to let him respond to those questions, because he's the one that briefed it. Does anyone have any other questions for this counsel about the preference itself? Okay, so it might be helpful, Mr. Halloran, if you're willing to stand up again and walk us back through what was in Conex I. In all Conex matters, it's pretty muddled as to what is or isn't raised by the plaintiff. And I think that if you look in the district court case, in the first Conex case that was brought in the federal courts, and we're now up to 10 different proceedings that we've had between Mr. Conex and Tech Alaska Incorporated. But if you look at the district court case, there's a lengthy complaint, and it alleges everything under the sun. If you look at the arguments, they focused on retaliation, and they focused on whether or not there were specific acts of discrimination against Mr. Conex. By the time we get to an appeal, I believe if you look at the briefing in the Ninth Circuit appeal from the first Conex federal district court case, there's a lengthy complaint that you will find that there are arguments that it was facially invalid. Well, I do have actually the complaint in the first action here, too. The complaint in the, I don't know if it's the first action, but I think underlies our decision in Conex I. This is a 2006 case. And on SCR 105 and 106 in the prayer for relief, he is asking for a temporary preliminary and permanent injunction against the defendant disallowing preference to shareholders and or Native Alaskans in regard to hiring and advancement as the first item of business. Yeah, I believe that's just the complaint. And then the rest of it seemed to flow from. I believe that the complaint raised every issue that there was, including facial validity. I believe that the arguments put forward by Mr. Conex in the district court did not squarely focus on facial validity in the first case. It certainly seems like we picked up on that. It seems to me that we have mentioned it in the opening paragraph of our decision in Conex I. Yeah, well, it was argued on appeal. It was argued to the district court apparently, too, because the district court seemed to think that E.R. Well, now I don't have the right. Well, certainly the goal, I mean, if you look at the complaint, I believe it's in the complaint. And if you look at Mr. Conex's goals, his goal is to eliminate shareholder hire, not just to say that there's been a specific act of discrimination against him, but he's out to challenge that policy. And the court understood that it was a challenge of that policy. And that's inherent in all the briefing that has happened in every court and every administrative agency. Well, if he raised it to us and we didn't dismiss it on the grounds that he had waived it or not preserved it appropriately in the district court, then we at least had an opportunity to pass on that in Conex I. Did we pass on it? Yes. If you look, I believe it's page 202. Did we address it in our opinion in Conex I? Is there any race judicata effect here as a result of our decision in Conex I? Yes. If you look at page 202 of the excerpts. 202 is the end of our decision. On the previous case, 201 is the place where we say that there's an unlawful preference and there's no evidence of direct discriminatory intent. Yes, you're correct. It's on page 201, and you reference the absence of any evidence of direct discriminatory intent. He was arguing to the appellate court that he was arguing a facial challenge. And the court said, well, there's no evidence of direct discriminatory intent. And I think that that language bars by res judicata any further proceedings for the claims that he's bringing. Because he had the opportunity. Cross motions for summary judgment. This court found that he had a full opportunity to develop the facts, to put the facts into the record, and he failed to do that. And by failing to do that, everything that's in the complaint, and as I said before, I mean, whether it was raised or not, I think it's barred by res judicata. I believe it was raised. I believe it's all in the complaint, and I believe that this court recognized that he failed to meet his burdens when it upheld the district court on the last go-round. My time's up. It is. I'm looking to see if my colleagues have more questions, since we are entitled to keep asking you if we have them. That's why I haven't walked away. I think we are finished asking your questions, and we appreciate your coming back. And we will now ask Mr. Conitz's counsel to return. And while you're looking at that, let me focus you on the following question, which is what was in the 2006 lawsuit. The third amended complaint is what I'm looking at in the 2006 lawsuit. And it starts out with several paragraphs describing and explaining the NANA shareholder preference. I was starting at SER 90, and the NANA shareholder preference was that the NANA shareholder preference was N91, is where the preference is described. And then at SER 105 and 106, Mr. Conitz sought an injunction against the shareholder preference. This is the 2006 lawsuit. And so I guess my question to you is, once that was raised and ruled on in the 2006 case, why do we get to look at it again on the merits? Okay, I think I can answer that. And you said 90 and 91, and then what other? 90 and 91, on SER 90 and 91, and SER 105 and 106. All right, I made that note, and let me come back to that, okay? Here's what I think the situation is. Mr. Halloran says there's collateral estoppel effect from the first case. He cites the ER 116. That's the beginning of Judge Beislein's Docket 67 order. And Judge Beislein says normally that's the rule, and he says as to some of these issues, there is race judicata. But when you get to ER 121, which is page 11 of 12 of the order, after he considers the comment, oh, law, Judge Beislein in the middle of the page says, quote, Conitz never obtained an appellate ruling on the validity of the shareholder preference. It therefore is not due collateral estoppel effect. So Judge Beislein considered that. He considered the issue of the legality of the preference, and he did it in the first case. Okay, but now it's our turn to look at that. And if that's a legal ruling, we have to know for review of that. So we have to figure out how to read your complaint in the earlier case, the district court in the earlier case, and our own case, our own decision in the earlier case. And if you could direct me to the page number for your own decision. I had a pen in there, but I pulled it out. It is at ER 200 through 202. Three-paragraph decision. First paragraph acknowledges Conitz contends tax employment preference for NANA shareholders is an unlawful racial preference under Title VII. That's the middle sentence in there. Then the next paragraph says Conitz failed to show he was qualified for the positions he sought, and in the absence of any evidence of discriminatory intent, has failed to establish a prima facie case of discrimination under a disparate impact theory, citing McDonnell Douglas. Well, what other evidence of direct discriminatory intent could there have been besides the racial preference? Doesn't that incorporate the racial preference? No, I believe that ruling, Your Honor, was done just as Judge Bybee, I think, started asking out at the beginning here. Tell me some facts as to why you don't lose on a factual basis of qualifications where the employer says he's not qualified, he's not minimally qualified, or he's not best qualified. In this ruling here, in this case, if you go back and listen to that argument, that's what it was all about. So they're not talking about does the preference in and of itself create the harm. Is that the make your prima facie case? They're saying how long did you work there, how much experience did you have, those kinds of things. That's why the issue of the legality of the preference wasn't passed on. And so when you go back and read Dockett's 67, at 116 it kind of sounds like Judge Beislein's going to say, yeah, we did this before, but then he says the ninth didn't pass on the legality of the preference. Here's my question about that, though. In the case of TWA v. Thurston, the Supreme Court said that if you have a discriminatory policy on its face that it has applied to the person, you started out, in fact, by arguing this, that you don't ever get to McDonnell Douglas. So the fact that we got to McDonnell Douglas, if we were following what the Supreme Court told us to do that first time, we would have had to first determine that the policy was not facially discriminatory, or we would never have reached the McDonnell Douglas point. So I guess that's what I'm struggling with. Okay, excellent point, Your Honor. Thank you. They didn't do it that way. They went right to the facts, which has some temptation, because with these cases you generally don't see a policy that says we're going to discriminate. And so the mind, when it goes to these cases, the first thing you say, discrimination, the next thing you hear is McDonnell Douglas. People don't go to TWA. They don't go to Swierkiewicz v. Thurston. Are there any supervisors at the mind that are not members of NANA, are not shareholders in NANA? I don't believe so, not in the operations department. Okay, there is one currently. Mr. Konitz wants meaningful appellate review of legality of the preference. It wasn't decided last time. Please decide it this time. He deserves to know the preference is an ongoing violation from day to day. It stigmatizes. Every day you go to work when you're classified in a different category, you suffer again. I don't think this is the kind of thing that goes away. In prior briefing, I had found the case, I can't remember the name of it now, I think it was a railroad case, Conrail or something that essentially says that. But it wasn't decided last time, Your Honors. And I suppose Judge Graber, and you seem to be very thorough, thank you, if you want to go back and listen to that argument and hear what it was all about. But it wasn't about the preference, it was about the facts. And my whole point here is that if you decide the preference, you may not need to go do the other sort of operative facts who has more experience in those types of things. Thank you very much.
judges: Alarcon, Graber, Bybee